## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

JOE A. THORNTON                                                    PLAINTIFF

VS.                                    Civil Action No. 3:09-cv-023-HTW-LRA

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER                           DEFENDANT

## ORDER GRANTING SUMMARY JUDGMENT

Before this court is defendant's effort by motion to have this lawsuit dismissed.
The defendant here, the University of Mississippi Medical Center, seeks dismissal
pursuant to Fed.R.Civ.P. 12(b)(6),[1] or for summary judgment pursuant to Fed.R.Civ.P.
56[2] [**Docket No. 20**].  Defendant attacks the entirety of plaintiff's complaint.

The plaintiff herein is Joe A. Thornton, a former employee of the defendant
University of Mississippi Medical Center ("UMMC").  Plaintiff, a white male, accuses
UMMC of race discrimination and retaliation, contending that he was discriminatorily

---

[1] Fed.R.Civ.P. 12(b)(6) states:
HOW TO PRESENT DEFENSES. Every defense to a claim for relief in any pleading must be
asserted in the responsive pleading if one is required. But a party may assert the following
defenses by motion:
. . .
(6) failure to state a claim upon which relief can be granted;
. . .

[2] Fed.R.Civ.P. 56(a) states:
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT.
A party may move for summary judgment, identifying each claim or defense—or the part of
each claim or defense—on which summary judgment is sought. The court shall grant summary
judgment if the movant shows that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law. The court should state on the record the
reasons for granting or denying the motion

targeted for reprisal by an African American Equal Employment Opportunity Director at UMMC, and denied the right to transfer to another department when his department was eliminated for budgetary reasons.  He claims another black employee was allowed to transfer, even though she had less seniority.

This court has subject matter jurisdiction over this dispute under federal question jurisdiction as provided by Title 28 U.S.C. § 1331.[3]  Plaintiff asserts claims under federal law.  Having fully considered the parties' submissions and the applicable law, this court grants defendant's motion for summary judgment.  Consequently, this court dismisses this lawsuit.

## I. Background

### A.  Procedural History

Plaintiff Joe A. Thornton ("Thornton") filed a complaint against UMMC with the Equal Employment Opportunity Commission ("EEOC") on March 23, 2008.  The EEOC issued a right to sue letter to the plaintiff on September 4, 2008.  On November 25, 2008, Thornton filed suit against UMMC in the First Judicial District of the Circuit Court of Hinds County, Mississippi, seeking damages under Title VII, Title 42 U.S.C. § 2000e *et seq.*[4] and Title 42 U.S.C. § 1981[5] for race discrimination.  Plaintiff also asserted state

---

[3] Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

[4] Title VII refers to the Civil Rights Act of 1964, codified as Subchapter VI of Chapter 21 of title 42 U.S.C.  § 2000e *et seq.* It prohibits discrimination by covered employers on the basis of race, color, religion, sex or national origin.

[5] Title 42 U.S.C. § 1981 provides in pertinent part:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

2

law claims for intentional infliction of emotional distress, negligent infliction of emotional distress and punitive damages. Defendant UMMC removed this action on January 14, 2009, and filed its answer and affirmative defenses on January 22, 2009.

The plaintiff filed a second charge of discrimination on August 21, 2009, after he applied for a position at UMMC and the online application system indicated he was disqualified. He received a right to sue letter from the United States Department of Justice, dated November 25, 2009, and amended his complaint on January 13, 2010, to include additional allegations of discrimination based upon retaliation and denial of due process rights. UMMC filed its answers and affirmative defenses to plaintiff's amended complaint on January 21, 2010. UMMC filed the aforementioned motion for summary judgment and motion to dismiss on January 25, 2010.

**B.  Relevant Facts**

Thornton, a white male, was hired by defendant UMMC as a medical technologist on March 20, 1990. During plaintiff's eighteen-year tenure at UMMC, he rose to the position of Chief Medical Technologist, a supervisory position. Plaintiff received yearly evaluations and alleges that he received superior ratings. In May 2006, plaintiff reprimanded a subordinate employee, Robert Lindsay ("Lindsay"), a black male.

---

evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Lindsay, thereafter, filed various complaints against Thornton alleging that Thornton had discriminated against him.  Troubled by Lindsay's accusations, UMMC management felt compelled to confront Thornton.

Between June of 2006 and May of 2008, plaintiff was informed "on numerous occasions, both verbally and written, that his work performance as a supervisor was below standards and needed to be improved."  Watson Aff., ¶ 8.  On June 20, 2006, Dodie McElmurray, plaintiff's supervisor, advised plaintiff in a memorandum, entitled "Coaching Session," that plaintiff was expected to uphold all standards of performance and conduct.  Plaintiff, warned the memorandum, was responsible for maintaining a work environment that treats people with dignity and respect.  Plaintiff was also cautioned never to again engage in conduct that could diminish a person's self-worth or sense of well-being.  Finally, the memorandum instructed plaintiff to maintain a professional and harmonious work environment, free from intimidation or fear, and if he could not fulfill his responsibilities, plaintiff was warned that disciplinary action, up to and including termination, would be taken.  June 20, 2006, Memorandum, docket no. 20-4.

Lindsay also complained to defendant's Equal Employment Opportunity ("EEO") Director Barbara Watson ("Watson"), a black female.  She determined that plaintiff "was crossing the line when it came to his style of supervision."  Watson Aff. at 42.  Watson later wrote to the EEOC on behalf of UMMC that plaintiff had problems with interpersonal skills and exhibited unacceptable practices in dealing with subordinates, but did not, according to plaintiff, cite exactly what type of unacceptable practices plaintiff had exhibited.  After Lindsay's complaints, plaintiff says, Dodie McElmurray told

4

Thornton that he had "put the institution at risk for a discrimination lawsuit."  Thornton Aff., dated March 28, 2010, docket no. 22-2.

On August 27, 2007, an UMMC Human Resource Representative provided UMMC's Guidelines for Managers for Performance Management ("Performance Management Policy") to Thornton.  The Performance Management Policy outlined a "progressive" approach to correcting deficiencies with employee performance.  The progression began with verbal counseling and proceeded to a written warning.  If the employee did not improve, the manager was to issue a final written warning, and ultimately could terminate the employee.

On September 4, 2007, Dodie McElmurray, in consonance with the Performance Management Policy, issued plaintiff a final written warning because of his "unprofessional behavior and failure to adhere to organizational policy and direction/instruction."  Final warning letter, docket no. 20-3.  The warning stated that plaintiff had not met UMMC's expectations of upholding all standards of performance, treating all people with dignity and respect, and providing a professional environment free from intimidation and fear.  Plaintiff was instructed that any further misconduct could result in termination.

UMMC policy, says Thornton, entitled him to a grievance hearing.  He says that he requested such a grievance hearing, but Watson would not afford him that opportunity.

Plaintiff also contends that notwithstanding the final written warning letter in his personnel file, he was still allowed, according to UMMC policy, to apply for a transfer to another UMMC Department six months after the date of the final written warning.

5

Plaintiff calculates that under UMMC policy he became eligible for transfer on March 4, 2008.

On March 19, 2008, UMMC employees at the Acute Care Lab, the department where plaintiff worked, were informed that the Lab was being eliminated and that a Reduction in Force ("RIF") would affect all twenty (20) employees in the department, including plaintiff, on May 19, 2008.  According to defendant, under UMMC's RIF Guide, plaintiff was not eligible to reapply for another position with UMMC because of the September 4, 2007, final written warning in his personnel file.

Plaintiff counters that he should have never received the final written warning in his personnel file and was denied due process when he was not allowed a hearing to grieve the final written warning.  Plaintiff obtained other employment outside UMMC at the State Board of Health.  He sent a resignation email to his supervisor, Dodie McElmurray, on May 6, 2008, advising her that he would work at UMMC until May 19, 2008.

## II.  Legal Standard

### A.  Dismissal Pursuant to Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Rule 12(b)(6) authorizes a court to dismiss a complaint "if it lacks any arguable basis in law." *Jackson v. Vannoy*, 49 F.3d 175, 176-177 (5th Cir. 1995).

### B.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c);  *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### III. <u>Analysis</u>

#### A.  Race Discrimination

Both parties have submitted affidavits, letters, and other documents in support of their arguments.  This court will consider the record as a whole, including the evidence submitted by both parties, and apply a summary judgment standard to this motion.

Defendant argues that plaintiff's Title VII race discrimination claim should fail because he has not established a *prima facie* case of discrimination as required by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, the complainant in a Title VII race discrimination first must establish a prima facie case for discrimination.  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995).  If the plaintiff makes such a showing, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  Finally, the plaintiff may survive summary judgment if he can show the employer's proffered reason is merely pretext for discrimination.  *Id.*

A plaintiff may establish a *prima facie* case for discrimination by showing he is: "(1) a member of a protected class; (2) qualified for the position in question; (3) the subject of an adverse employment action; and (4) was replaced by someone outside the protected class or otherwise discharged because of his membership in the protected class."  *Dulin v. Board of Com'rs of Greenwood Leflore Hosp.*, 646 F.3d 232,

7

236 (5th Cir. 2011).

Defendant concedes the first prong and acknowledges that the Fifth Circuit has recognized that the plaintiff only need be a member of "a protected group," meaning a group protected under Title VII.  *See e.g., Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000) (holding that because an individual is not a racial minority in his workplace does not prevent him from making a *prima facia* case of reverse discrimination under Title VII).

As to prong two, defendant contends that plaintiff did not satisfactorily perform his job as a supervisor prior to the RIF.  He was counseled and reprimanded for inappropriately disciplining a subordinate, which resulted in that subordinate lodging multiple complaints of race discrimination against Thornton.

UMMC further argues that the Performance Management Policy bars an employee from requesting a transfer to another job at UMMC within six months of receiving any formal disciplinary action.  Performance Management Policy at 6. Thornton received his final written warning on September 4, 2007.  He was notified of the RIF on March 19, 2008. Thornton calculates that he should have been eligible to apply for a transfer after March 4, 2008, six months after his written warning.  Thornton says, to the contrary, the Director of Human Resources, Kathy Smith, told him on March 17, 2008, that he "would not be allowed to apply for any positions at UMC until after [his] separation date of May 19, 2008."  Letter from Thornton to Dodie McElmurray, docket no. 22-2.

UMMC argues that Thornton was eligible to apply for a transfer from March 4, 2008 through the end of his employment at UMMC on May 20, 2008, under the

Performance Management Policy.  The UMMC RIF Policy, however, barred his transfer, and made him ineligible for rehire after termination.   Defendant claims that although plaintiff had received counseling and coaching after having received a final written warning, he continued to exhibit behavior which was unbefitting a supervisor.  He was not terminated, but the final written warning remained in his file, and he continued in the progressive discipline process.  UMMC says there is no policy requiring the warning be removed from his file after six months; and that it could remain there as long as the facts and circumstances dictated.  The RIF Policy states:

> 5.  Qualified employees whose positions are eliminated are eligible to seek other suitable internal positions via the UMMC job posting procedure during the next 12 months.  A special termination code will be used to identify those affected by the RIF.  First consideration will be given to those RIFFED employees for any jobs that they apply for and meet the minimum qualifications.
> . . .
> 8.  [a]ny employee on a written warning in the progressive discipline process will not be considered eligible to apply for other positions with UMMC.

The RIF Policy, not discriminatory animus, says defendant, was the real reason Thornton was unable to transfer to another position within UMMC when his department was eliminated for budgetary reasons.

As to the third prong, defendant argues there was no adverse employment action.  Despite having had to take extensive disciplinary measures against plaintiff, UMMC did not terminate plaintiff, says UMMC.  He resigned.

As to the fourth prong, defendant claims that neither race nor any discriminatory animus played a role in plaintiff's departure from and disqualification for rehire at UMMC.  The plaintiff was ineligible for transfer and for rehire solely because of his prior

poor performance, and the RIF Policy prohibiting transfer or rehire of someone on a written warning in the progressive disciplinary process.

Plaintiff argues that in a work-rule violation case, he can establish a *prima facie* case by showing "that he did not violate the rule." *Mayberry v. Vought*, 55 F.3d 1086, 1090 (5th Cir. 1995).  Under this theory, plaintiff says, he only need show that he did not violate UMMC policies and the written warning was inappropriate.  Here, plaintiff says, he was performing his job satisfactorily.  He was disciplined and ultimately received a final written warning, he says, because he was white and because he reprimanded a black employee, not because of misconduct on his part or failure to follow UMMC rules of policies.  Thornton complains of race discrimination and, alleges Thornton, UMMC disciplined him to avoid the risk of a race discrimination suit by the black employee.

As for why he did not attack the appropriateness of the final warning sooner, plaintiff argues that he could not file an EEOC complaint or suit based solely on the written final warning because, under Fifth Circuit jurisprudence, it did not constitute an "adverse employment action."  But, says plaintiff, when the written warning barred him from obtaining ongoing work at UMMC at the time of the RIF, it became an adverse employment action.  Absent the written final warning, which was issued based on his race and not misconduct on his part, reasons plaintiff, he could have transferred to another job or been rehired after leaving UMMC. As a result, he was forced to take a job with another division of the state at lower pay, in order to preserve his tenure and benefits with the State of Mississippi.

Plaintiff's discrimination claim is without an evidentiary basis.  He acknowledges UMMC's disciplinary actions against him were based upon complaints of a supervised

10

employee.  The record supports UMMC's assertion that he was warned several times about unprofessional behavior.  He does not challenge UMMC's statement that his entire department was subjected to a RIF.  He does not contest UMMC's assertion that the RIF policy forbad application to another department.  Plaintiff's only contention is that he received the final written warning because he was white and had disciplined an employee who was black.

Finally, plaintiff is not aided by his reliance on jurisprudence in work-rule violation cases.  To establish a prima facie case under these decisions, he must show he did not violate the rule or that employees of a different race violated the same rule and were treated differently.  *Mayberry*, 55 F.3d at 1089.  The plaintiff, however, has provided no evidence other than conclusory statements in his affidavit that he did not violate UMMC policies and inappropriately reprimand a subordinate.  He has neither described the subordinate's misconduct nor his own conduct with respect to the matter.  This court is completely in the dark as to what occurred and whether plaintiff conducted himself professionally or in accordance with the policies and standards for supervisors at UMMC.  In a Title VII discrimination case, the plaintiff bears the ultimate burden of persuasion.  *Tex. Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  The plaintiff here has fallen short of that burden.

### B.  Retaliation

Plaintiff's Title VII retaliation claim also fails for the reasons above discussed. Plaintiff has not established a prima facie case and defendant has established a compelling legitimate nondiscriminatory reason for its actions.  To prevail on a retaliation claim, plaintiff must establish a *prima facie* case for retaliation by proving

11

that: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).

In support of his retaliation claim, plaintiff offers primarily the same arguments he employed in support of his race discrimination claim.  He adds that he did not voluntarily resign his position with UMMC but was forced to resign.  Indisputably, on May 6, 2008, plaintiff advised UMMC that he would leave employment by May 19, 2008.  The fact that the UMMC RIF policy barred his transfer to another department does not lend any evidentiary support to his claim of retaliation or discrimination.  He could not transfer because of policies which applied across the board to employees at UMMC.

Plaintiff also suggests that UMMC retaliated against him because of his intent to file a charge of discrimination with the EEOC.  This accusation is thoroughly undermined by the facts.  Plaintiff was disciplined repeatedly, all prior to any actions he took before the EEOC.  UMMC's RIF policy is dated August, 2007, and preceded plaintiff's complaint to EEOC.  On May 22, 2008, Barbara Watson noted on plaintiff's Personnel Action Request form that he was ineligible for rehire.  UMMC Personnel Action Request, docket no. 22-2, exhibit M.  This was prior to his filing his first EEOC complaint.  Accordingly, as earlier stated, plaintiff's claim of retaliation has no basis.

### C. Due Process

At oral argument, the plaintiff conceded his due process claim.

### D.  Section 1981 Claim and State Law Claims

Defendant argues that plaintiff's claim pursuant to Title 42 U.S.C. § 1981 should be dismissed as a matter of law because §1981 does not afford a remedy against a

governmental entity.  *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458 (5th Cir. 2001).
Plaintiff concedes his § 1981 and his intentional infliction of emotional distress claims.
Plaintiff's Memo in Response to Defendant's Motion for Summary Judgment at 12.

## IV.  <u>Conclusion</u>

Defendant's motion for summary judgment is granted.  Plaintiff cannot establish
a *prima facie* case to prevail on any of his claims.  Plaintiff concedes his Due Process,
Title 42 U.S.C. § 1981 and intentional infliction of emotional distress claims.  No
substantive claims remain as a basis to award punitive damages.  This lawsuit is
dismissed.  In accordance with the local rules, this court will enter a separate final
judgment.

SO ORDERED, this the 19th day of September, 2011.

s/ HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE

Civil Action No. 3:09-cv-23 HTW-LRA
Order Granting Summary Judgment

13